UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| REYNALDO MADRIGAL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-340 |
| | § | |
| RUSSELL TRUST ASSOCIATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff filed this civil action *pro se* on October 31, 2017. (D.E. 1). The case has been referred to the undersigned Magistrate Judge for case management pursuant to 28 U.S.C. § 636. The undersigned has reviewed Plaintiff's complaint and has determined it neither presents a federal question nor fulfills the requirement of complete diversity. Therefore, it is respectfully recommended Plaintiff's case be **DISMISSED** for lack of subject matter jurisdiction.

**I. BACKGROUND**

Pancho Villa was a prominent figure of the Mexican Revolution. His skull, which was stolen from his grave in 1926, is rumored to be in the possession of Yale University's Skull and Bones Society (the "Society").[1] The Society has been accused of housing other similar artifacts as well.[2]

---

[1] *See Pancho Villa Skull at Yale?*, The Washington Post, Aug. 11, 1988. The Washington Post reported that a group of Mexican nationals in El Paso, Texas wished to sue the Society in 1988 to reclaim Villa's skull but were struggling to establish standing. The article noted the group sought but did not obtain the support of Villa's wife and were then trying to locate Villa's descendants. For a detailed account of how the Society purportedly came to possess Villa's

In his civil complaint, Plaintiff alleges the Society possesses Villa's skull, and further alleges the various Defendants, including the Russell Trust Association,[3] George H.W. Bush, Willard Mitt Romney, and Yale University, are aware of the skull's presence in the Society's headquarters on Yale's campus. (D.E. 1, Page 4). Plaintiff also asserts Defendant Romney is a member of the Society. (D.E. 1, Page 4). Plaintiff's requested relief is that Villa's skull be returned so that it may be buried with his body in Mexico City. (D.E. 1, Page 4).

On November 13, 2017, the undersigned ordered Plaintiff to file a more definite statement concerning the grounds for the Court's jurisdiction over his claim. (D.E. 4). Plaintiff filed a more definite statement on November 20, 2017. (D.E. 5). None of the Defendants has appeared in this action.

## II.   JURISDICTION

Absent a challenge by a litigant, a federal court must examine the basis of its jurisdiction *sua sponte*. *See Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015) ("It is axiomatic that we must consider the basis of our own jurisdiction, *sua sponte* if necessary."); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (federal

---

skull, and more on the El Paso group's efforts to recover it, see also Mark Singer, *La Cabeza de Villa*, The New Yorker, Nov. 27, 1989, at 108.

[2] A suit was filed against the Society to recover the remains of the Apache warrior Geronimo, which, according to the plaintiffs, had been stolen from the grave and transported to the Society's premises on Yale campus in the early 1900s. *Geronimo v. Obama*, 725 F. Supp. 2d 182 (D.D.C. 2010). The *Geronimo* plaintiffs based their claim upon the Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 *et seq*. The court held the plaintiffs failed to establish the United States had waived its sovereign immunity, and dismissed the case for lack of subject matter jurisdiction and for failure to state a claim.

[3] The Russell Trust Association is the governing body of the Society. *See generally*, Alexandra Robbins, Secrets of the Tomb: Skull and Bones, the Ivy League, and the Hidden Paths of Power (Little, Brown & Co., Back Bay Books, 2002).

courts must address jurisdiction *sua sponte* if not raised by the parties). The burden of establishing jurisdiction rests on the party seeking the federal forum. *Howery*, 243 F.3d at 916.

At various points in his *Pro Se* Complaint Form, Plaintiff checked both "federal question" and "diversity of citizenship" as the basis for federal jurisdiction. (D.E. 1, Page 3 and 6). Plaintiff's more definite statement, alleging three of the Defendants are "in another state," supports the conclusion that Plaintiff intended to base jurisdiction upon diversity of citizenship. (D.E. 5). For completeness, however, the undersigned has considered both federal question and diversity jurisdiction.

A. **Federal Question**

Under 28 U.S.C. § 1331, a district court has original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Whether a cause of action presents a federal question depends on the allegations of the plaintiff's well-pleaded complaint. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995). A suit arises under federal law – i.e. presents a federal question – if there appears on the face of the complaint some substantial, disputed question of federal law. *Id; see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 11 (1983) (plaintiff's complaint establishes the case arises under federal law where a right created by federal law is an essential element of the plaintiff's cause of action) (citation omitted).

Here, the face of Plaintiff's complaint presents no issues of federal law. Plaintiff's requested relief – that Defendants be ordered to return stolen property – does not raise a

federal claim. Accordingly, Plaintiff has not established this Court has federal question jurisdiction.

### B. Diversity of Citizenship

A federal district court has diversity jurisdiction over civil matters "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different states." 28 U.S.C. § 1332(a). The diversity statute requires complete diversity of citizenship, meaning that all persons on one side of the controversy must not share the same citizenship as any one person on the other side. *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).

In the instant case, complete diversity is lacking because Plaintiff and one of the Defendants, George H.W. Bush, are citizens of the same state. Plaintiff is a resident of Corpus Christi, Texas, and Defendant Bush is a resident of Houston, Texas. (D.E. 1, Pages 1-2).[4] Therefore, the undersigned recommends this Court cannot exercise diversity jurisdiction over Plaintiff's claim and it should be dismissed. *See Vela v. Manning*, 469 F. App'x 319, 320 (5th Cir. 2012) ("Without complete diversity, this suit cannot proceed under 28 U.S.C. § 1332(a)."); *see also Howery*, 243 F.3d at 920 (court must dismiss for lack of jurisdiction where there is no evidence of diversity on the record).

---

[4] Further, it is not apparent from Plaintiff's complaint that the amount in controversy exceeds the minimum requirement of $75,000. Plaintiff does not allege a specific amount, nor has he alleged facts from which the amount in controversy could be reasonably inferred. (D.E. 1, Page 4). This is an independent reason to find that diversity jurisdiction is not established. *See Fairley v. Ford*, No. CV H-17-1639, 2017 WL 3507015, at *4 (S.D. Tex. Aug. 16, 2017) (finding plaintiff's failure to allege her damages exceed the jurisdictional amount is an independent reason to dismiss for lack of subject matter jurisdiction, even after court found plaintiff did not establish diversity of citizenship).

## III.  RECOMMENDATION

For the reasons stated, the undersigned recommends Plaintiff's cause of action should be **DISMISSED** for lack of subject matter jurisdiction.

Respectfully submitted this 21st day of November, 2017.

                                            Jason B. Libby
                                     United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).